UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OSCAR RIOS, JR.,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No. 1:16-cv-171

HON. JANET T. NEFF

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff Oscar Rios seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See*

*Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-four years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.46, 70.) He completed the tenth grade, and was previously employed as a forklift driver and assembly line worker. (PageID.71, 89.) Plaintiff applied for benefits on February 27, 2013, alleging that he had been disabled since August 1, 2008, due to type II diabetes, hepatitis, depression, hypertension, and hyperlipidemia. (PageID.97–98, 152–153.) Plaintiff's application was denied on August 13, 2013, after which time he requested a hearing before an ALJ. (PageID.117–127.) On June 19, 2014, Plaintiff appeared with his counsel before ALJ Lawrence Blatnik for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.65–95.) In a written decision dated August 15, 2014, the ALJ determined that

Plaintiff was not disabled. (PageID.46–64.) On December 21, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.32–36.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b);

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d);

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e);

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f).

the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Blatnik determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.51.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) diabetes with neuropathy; (3) degenerative arthritis with torn meniscus of the left knee; (4) hepatitis C with cirrhosis of the liver; (5) obesity; (6) depression; (7) a cognitive disorder; and (8) a history of substance abuse. (PageID.51.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.51–52.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b). He can lift or carry a maximum of 20 pounds occasionally and ten pounds frequently; stand, walk and sit for at least six hours of an eight-hour shift; can never climb ladders, ropes or scaffolds; only occasionally balance, stoop, crouch, kneel, crawl, squat or climb ramps and stairs; is limited to only occasional exposure to extreme heat, extreme cold and humidity; can never use air, pneumatic, power, torque or vibratory tools; and never work with dangerous or unprotected machinery or at unprotected heights. Furthermore, he is able to understand, remember and carry out only short simple instructions; and is limited to simple unskilled work with SVP rating of 1 or 2; work that involves only occasional contact with, and occasional direction from, a supervisor; work requiring only brief and superficial contact with the public; and routine work that does not require frequent significant changes or adaptations.

(PageID.53.) Continuing with the fourth step, the ALJ determined found that Plaintiff was unable to perform any of his past relevant work. (PageID.57.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform

4

given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a hand packer (50,000 jobs), bench hand (60,000 jobs), press operator (60,000 jobs), and cashier (70,000 jobs). (PageID.90–91.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.58.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from August 1, 2008 through August 15, 2014. (PageID.59.)

## DISCUSSION

### 1. The ALJ's RFC Determination is Supported by Substantial Evidence.

Plaintiff first argues that the ALJ "never explains" in his RFC discussion "how someone with the severe impairments found by the ALJ can do the exertional demands of light work." (PageID.1188.) But it is not entirely clear from Plaintiff's brief exactly how the ALJ may have erred.

To the extent that Plaintiff claims his severe impairments should have led the ALJ to find him disabled, Plaintiff is mistaken. Whether a claimant has a "severe impairment" is determined at step two of the sequential evaluation, and defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant's RFC is determined at step four of the sequential evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained

performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d 524, 530 (6th Cir. 1992). "A claimant's severe impairment may or may not affect his or her functional capacity to do work." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). This is because "[t]he regulations recognize that individuals who have the same severe impairment may have different RFC's depending on their other impairments, pain, and other symptoms." *Griffeth*, 217 F. App'x at 429 (citing 20 C.F.R. § 404.1545(e)); *see, e.g.*, *West v. Colvin*, No. 5:14–69–KKC, 2014 WL 7177925, at *4 (E.D. Ky. Dec. 6, 2014) ("[t]he ALJ is not required to incorporate all 'severe impairments' in her RFC assessment"). In formulating the RFC, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, at 547–48 (6th Cir. 2002) (citations and quotation marks omitted). Accordingly, Plaintiff's claim that they ALJ's step two step two determination mandated a certain RFC or disability determination is rejected.

The gravamen of Plaintiff's claim, however, appears to be that the ALJ never explained his RFC determination. While it is apparently a mystery to Plaintiff how the ALJ arrived at the RFC, the Court is not as perplexed. The ALJ's RFC discussion spans six pages and includes a summary of the medical evidence, a discussion of Plaintiff's allegations, and the discussion of the opinion evidence. (PageID.52–57.) A review of the ALJ's decision demonstrates the ALJ thoroughly discussed the medical record and provided ample reasoning for his RFC determination. For example, the ALJ noted Plaintiff's treatment for the impairments he found to be severe, but found the medical record and Plaintiff's daily activities did not support the severity of Plaintiff's

allegations. (PageID.53–56.) The ALJ also gave great weight to the July 2013 opinion from Dr. B.D. Choi, a state agency consultant. Dr. Choi found that Plaintiff could occasionally lift and carry twenty pound weights and frequently lift and carry ten pound weights. (PageID.106.) Plaintiff could stand, walk, and sit each for a total of about six hours in an eight hour workday. (PageID.106.) He was unlimited in his ability to push and pull. (PageID.106.) The ALJ was free to consider the consultant's opinion and determine what weight, if any, it should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the Court finds the ALJ adequately explained his reasons for determining Plaintiff could perform a range of light work, and supported his decision with substantial evidence.

Plaintiff further claims, however, that the ALJ failed to consider several medical records documenting his complaints of fatigue, memory issues, chronic pain, leg weakness and swelling, night seats, and trouble sleeping. (PageID.1189–1190.) Plaintiff has not identified a basis for disturbing the Commissioner's decision. The ALJ is not required to discuss every piece of evidence, and his failure to do so does not indicate that the evidence was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006). Moreover it is clear the ALJ did in fact discuss and evaluate several of the impairments Plaintiff claims he neglected. In discussing Plaintiff's credibility, for example, the ALJ noted a May

15, 2014, treatment note that found no fatigue. Plaintiff denied any pain, swelling, or stiffness, and further denied anxiousness, depressed mood, insomnia, or impaired memory. (PageID.1167–1168.) It is the ALJ's role to resolve any evidentiary conflicts. *See Garner*, 745 F.2d at 387. And Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction. He must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). Plaintiff has failed to meet his burden.

For all the above reasons, Plaintiff's claim of error is denied.

**2.     Plaintiff Has Not Demonstrated How the ALJ Violated SSR 02-1P.**

At the hearing, Plaintiff testified that he was 5' 10" tall and weighed two hundred seventy-five pounds. (PageID.70.) Plaintiff next claims the ALJ "[n]ever mentions or evaluates SSR 02-1p with regard to obesity." (PageID.1190.) Plaintiff has not demonstrated error.

SSR 02-1p states that:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus—even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity or slowed reactions that may result from obesity-related sleep apnea.

SSR 02–1P, 2000 WL 628049, at *3 (Sept. 12, 2002). The ruling goes on to provide guidance for evaluating a claimant's obesity during the sequential evaluation. For example, at step three of the five-step disability analysis, the Commissioner will:

> find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.
> * * *
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

*Id.* at *5. And in determining a claimant's RFC:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

*Id.* at *6. But the ruling then cautions, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." *Id.* In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent medical opinions and

9

evidence to show specifically how his obesity exacerbated his other impairments, or interacted with them, to render him incapable of all suitable work. Plaintiff had the burden of showing specifically how his obesity, in combination with other impairments, limited his ability to a degree inconsistent with the ALJ's RFC determination. Plaintiff fails to meet that burden.

Moreover, as the Sixth Circuit has made clear, SSR 02–1P "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citation omitted); *see also Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants"). The ALJ recognized that Plaintiff was obese at step two and analyzed the entire record in assessing Plaintiff's RFC. The Court finds the ALJ's RFC determination sufficiently accounts for Plaintiff's obesity and the limitations reasonably imposed by such. Plaintiff has failed to show otherwise. This argument is, therefore, rejected.

### 3. The ALJ Properly Considered Plaintiff's Subjective Allegations.

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than that recognized by the ALJ. He testified, for example, that he could not walk for more than a block at any one time. He could only stand for twenty to thirty minutes, and sit for thirty minutes. (PageID.78.) He testified that he could not work a full time job, stating that "[j]ust in a short time I start hurting." (PageID.83.) He further testified that he had difficulty remembering, stating that at times he could not remember where he put things, what he was going to do next, or whether he had taken his medicine. (PageID.85.) The ALJ found Plaintiff's complaints were "not

entirely credible." (PageID.53.) Plaintiff claims that the ALJ failed to properly accommodate his complaints and specifically erred in equating his daily activities to an ability to work. (PageID.1190.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ evaluated Plaintiff's allegations as follows:

The medical evidence of record does not support the degree and severity of limitation as alleged by the claimant. The treatment records from 2008 through 2014 at Capital Medicine show that the claimant generally had normal and stable health condition, even with his impairments, and he had no medical complications. A May 2014 office visit report from Capital Medicine noted that, other than his complaint of left knee pain, the the claimant reported that he had no fatigue. He had no cardiovascular symptoms, and no frequent urination. With his musculoskeletal review, the claimant reported that he had no decreased range of motion, stiff[ness] or swelling. He reported that he had no anxiety, depressed mood, impaired memory or insomnia. He had no weakness, tremor or paresthesia. Furthermore, the clinical physical examination showed that the claimant was well nourished and developed. He had a normal cardiovascular examination with normal heart sounds and no murmurs. He generally had no cyanosis, clubbing or edema in his lower extremities. Neurologically, the claimant had normal motor, strength and tone in all his extremities. There were no focal deficits, and his sensory examination was normal. His psychiatric examination showed good judgment and insight, intact memory and

appropriate mood and affect. The musuloskeletal examination showed normal station and gait, normal movements of the joints and no crepitation, tenderness, masses, dislocation, subluxation or laxity. His muscle strength and tone were normal. The claimant had numerous office visit reports through his years of treatment at the Capital Medicine that were essentially the same as the May 2014 office visit report, all indicating a stable and maintained health condition (Exhibits 7F, 19F, 24F, 27F and 40F).

Furthermore, treatment records relating to the claimant's hepatitis C condition from the Gastroenterology Institute showed improvement, compliance and no side effects. His condition remained maintained and stable with treatment. His physical, musuloskeletal, neurological and psychiatric examinations during his follow up office visits with Dr. Rose were normal (Exhibits 16F, 34F and 35F). In December 2011, during his office visit, Dr. Ezzo forwarded a letter to the Gastroenterology Institute, indicating that the claimant was not exhibiting depressive symptoms over the past three months of receiving injections, which was improving the claimant's pain. He continued to maintain a stable psychiatric condition with mental treatment at the Par Rehab Services. The office reports of Dr. Ezzo showed that the claimant generally had appropriate judgment, clear and coherent thought processes, and his overall affect was appropriate (Exhibit 33F). The treatment records from Dr. Ferro's office showed that the claimant had relief with treatment and improvement of his pain. The reports indicated that the claimant had overall appropriate affect, and clear and coherent though processes (Exhibits 31F and 36F).

***

I considered the credibility of the claimant's allegations and note that the claimant had described activities that were not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. In the April 2013 function report, the claimant reported that he had trouble with postural maneuvers and his memory problem due to the effects of his impairments. At the same time, the claimant reported that he was able to prepare meals, perform household chores – including cleaning and doing the laundry – and mowed the lawn on a weekly basis. He reported that he shopped for groceries, could handle his finances and followed instructions (Exhibit 5E). During the August 2009 psychological evaluation, the claimant reported that he was taking care of his ailing mother (Exhibit 3F). Additionally, during the hearing, the claimant testified

> that he drives daily. He is able to prepare his meals, perform personal care and grooming and do his laundry and yard work, including mowing the lawn. He also cleans snow in the winter. The claimant shops in stores for his groceries. He testified that he is learning to use a Kindle device. Clearly, these are not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity.

(PageID.56–57.)

Rather than allege any error in the above discussion, Plaintiff begins by claiming the "ALJ never rejects any of the Plaintiff's complaints because they are simply never discussed in the decision. The ALJ states that he does not find claimant credible; however, the ALJ never discusses or evaluates Mr. Rio'[s] subjective complaints under 20 CFR 416.929(c)." (PageID.1190.) Plaintiff goes on to say that "[s]uch factors as medication side effects, daily activities, and pain symptoms are never discussed in the ALJ['s] decision." (PageID.1191.) This is, quite simply, incorrect. As the above excerpt demonstrates, even a cursory review of the ALJ's decision reveals an extensive credibility discussion. (PageID.53, 56–57.) In addition, the ALJ explicitly stated he had evaluated Plaintiff's subjective complaints as required in 20 C.F.R. § 404.1529 (the regulation corresponding to 20 C.F.R. § 416.929 for DIB claims) and discussed Plaintiff's medication, daily activities, and allegations of pain. (PageID.53.) It does nothing in service to his client for counsel to provide broad, generic assertions that are easily proven false.

The Court finds the ALJ's credibility discussion accurately reflects the record, and contains several specific reasons for finding Plaintiff's allegations to not be fully credible. Accordingly, substantial evidence supports the ALJ's credibility determination.

Despite his initial misstep, Plaintiff does raise two specific arguments regarding the ALJ's credibility discussion. Neither argument, however, compels a different result. Plaintiff first

claims that the ALJ should have credited his work history in evaluating the credibility of his complaints. (PageID.1191.) In *Felisky v. Bowen*, 35 F.3d 1027, 1036–41 (6th Cir. 1994) the Sixth Circuit included the claimant's work history as one of the factors supporting the claimant's credibility, *see id.* at 1041, but it did not adopt a presumption of credibility based on that factor. *Id.* "The Sixth Circuit has never held that a social security benefits claimant is entitled to a 'presumption of credibility.' It is the ALJ's function to determine credibility issues, and the claimant's work history is only one of the many factors that the ALJ can consider in making his credibility determination." *Barney v. Comm'r of Soc. Sec.*, No. 1:08–cv–1225, 2010 WL 1027877, at *4 (W.D. Mich. Jan. 20, 2010) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); 20 C.F.R. § 404.1529) *report and recommendation adopted*, 2010 WL 1027867 (W.D. Mich. Mar. 18, 2010).

The ALJ considered the evidence of record and the extent to which Plaintiff's symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," which would include Plaintiff's work history. (PageID.53) (citing 20 C.F.R. § 404.1529). It is patent the ALJ was aware of Plaintiff's past work as a forklift driver and assembly line worker. (PageID.57.) Credibility determinations fall within the province of the ALJ. *See, e.g.*, *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 508 (6th Cir. 2014). There is substantial evidence supporting the ALJ's credibility determination, despite Plaintiff's work history. Accordingly, this argument is rejected.

Plaintiff next claims the ALJ impermissibly equated his daily activities with an ability to perform full time work, and furthermore misrepresented those activities. (PageID.1191–1192.) In *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007), the Sixth Circuit

15

noted that "somewhat minimal daily functions are not comparable to typical work activities." However, as the regulations and case law make clear, a claimant's daily activities may be used in evaluating the severity of a claimant's complaints. *See* 20 C.F.R. § 404.1529(c)(3); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.").

Here, the ALJ began by noting that Plaintiff's activities were not as limited as one would expect, given the severity of his complaints. (PageID.57.) This appears to be a permissive use of demonstrating a lack of support with, and an inconsistency between, Plaintiff's complaints and the record. However, the ALJ ends the discussion by noting that "[c]learly, these are not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity." (PageID.57.) This statement appears to move into the area that concerned the court in *Rogers*. It is not clear, then, whether the ALJ referenced Plaintiff's activities in an allowable way or equated them with an ability to work. Ultimately, the Court need not decide this point as even assuming Plaintiff is correct, the ALJ provided several other reasons, supported by substantial evidence, for discounting Plaintiff's allegations. As the above discussion makes clear, the ALJ found Plaintiff's complaints enjoyed no support in the record. Treatment records consistently found normal gait and station, and Plaintiff presented with coherent thought processes, and appropriate affect. Accordingly, the Court finds no basis for disturbing the ALJ's decision. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Carmickle v. Comm'r of Soc. Sec.*,

533 F.3d 1155, 1162 (9th Cir. 2008)) ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal").

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.**  A separate Judgment shall issue.


Dated:  October 28, 2016                                               /s/ Janet T. Neff
                                                                                         JANET T. NEFF
                                                                                         United States District Judge